1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SANDRA K. KRAUSE,                                    )
                                                     )
                    Plaintiff,                       )          Case No. 2:12-cv-00342-JCM-CWH
                                                     )
vs.                                                  )          **ORDER**
                                                     )
NEVADA MUTUAL INSURANCE CO., *et al.*,               )
                                                     )
                    Defendants.                      )
_____)

     This matter is before the Court on Plaintiff's Motion to Compel (#85), filed May 31, 2013, and Defendants' Response (#102), filed June 17, 2013.  Plaintiff did not file a reply.

**BACKGROUND**

     Both the Court and the parties are familiar with the procedural and factual background of this case.  Plaintiff has alleged (1) gender discrimination in violation of 42 U.S.C. § 2000e *et seq*., (2) gender discrimination in violation of Nevada Revised Statute ("NRS") 613.310 *et seq*., and (3) retaliation.[1]  The only remaining defendants are Nevada Mutual Insurance Company ("NMIC") and Trean Corporation ("Trean").  The motions under consideration have been pending since before discovery closed and prior to the filing of Defendants' motion for summary judgment.  Generally, a timely motion to compel should be considered before consideration of a summary judgment motion.  *See Haney v. Nelson*, 476 Fed. Appx. 147 (9th Cir. 2012) (citing *Garrett v City of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987).

_____

[1]  The following claims have been dismissed: (1) Plaintiff's claim for intentional infliction of emotional distress, (2) Plaintiff's claim of constructive discharge, (3) Plaintiff's claim for negligent hiring, supervision and retention, (4) Plaintiff's claim for tortious interference with employment relationship, and (5) Plaintiff's claim for breach of the covenant of good faith and fair dealing.  All claims against Mr. Andrew O'Brien and Roe and Doe defendants have been dismissed.

**1. Plaintiff's Motion to Compel (#85)**

By way of this motion, Plaintiff seeks an order compelling the production of the entire content of her email account with Defendant Trean for 2008 through March of 2011.  She also seeks sanctions for spoliation of evidence.  The motion stems from two interrelated Rule 34 requests for production.  The first Rule 34 request was propounded on or around August 9, 2012, and requested as follows:

> **Request for Production No. 42: Please produce the contents of the laptop computer Sandra Krause used during her employment and then turned into the Nevada Mutual office upon request and the termination of her consulting arrangement in March, 2011.**
>
> **Response: Objection.  This request is vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving said objections, see relevant documents [previously produced].  Upon Sandra Krause's termination of her consulting arrangement in March of 2011, her email box was preserved.  Due to the extremely poor condition of Sandra Krause's laptop computer, it was removed from TREAN's inventory and the hard-drive of her laptop computer was wiped clean before being sent to a recycling company.  Upon information and belief, there are no records related to the contents of the laptop computer at the time Sandra Krause turned in the laptop computer other than the email box and the electronic documents that she had filed within TREAN's server.[2]**

The second Rule 34 request was set forth in Plaintiff's fourteenth set of requests for production, which was propounded on or around March 1, 2013, and requested as follows:

> **Request for Production No. 101: Please produce a copy of the contents of Ms. Krause's IN Box and Sent Box on the TREAN email system for the years 2008, 2009 and 2010 and then the time period of January-March 2011.**
>
> **Response: Objection.  This request is overly broad, vague, compound, unduly burdensome, not limited in scope, and seeks the disclosure of attorney/client privlileged communication and/or attorney work**

---

[2]  This Rule 34 request was propounded on or around August 9, 2012, as part of Plaintiff's fourth set of requests for production.  *See* Ex. 1 attached to Pl.'s Mot. (#85).  The response was served on or around September 11, 2012.  Ex. 2.  Plaintiff's requests for production included a general instructions and definitions sections which broadly defined "documents" to include emails and text messages.  Ex. 1.  Defendants' response contained "general objections," which included: (1) objection to production attorney work product, attorney-client communications, and privileged information and (2) objection to production beyond that required by the Minnesota Rules of Civil Procedure.  Ex. 2.

1          **product.**[3]

2     As with other discovery motions, it is clear that Plaintiff's counsel engaged in the requisite meet and

3     confer effort prior to filing this motion.

4          In her motion, Plaintiff asserts that Defendants have engaged in wholesale withholding of

5     evidence by selectively producing emails they deem relevant while continuously objecting that

6     review of the emails is overly burdensome.  *See* Pl.'s Mot. (#85) at 2:15-22.  Plaintiff takes

7     exception with what she characterizes as improper boilerplate objections; however, boilerplate

8     objections notwithstanding, she argues that none of Defendants' objections have any merit.

9     According to Plaintiff, the requests are not vague as they clearly seek production of the contents of

10    Plaintiff's work laptop and work email account.  Plaintiff acknowledges the contents of the laptop

11    are no longer available, but argues the refinement of the request to her work email inbox and sent

12    box from 2008 through March 2011 is reasonable in relation to the time she was employed and the

13    events giving rise to this lawsuit.  She further identifies a number of reasons why the emails are

14    reasonably calculated to lead to admissible evidence, including, but not limited to: (1)

15    documentation of her discussions and references to raising issues and concerns with her supervisor,

16    (2) documentation of discussions about her performance and work product, (3) an absence of

17    documentation calling her job performance into question, and (3) equal access to evidence which

18    Defendants have reviewed and disclosed in piecemeal fashion.  Plaintiff questions the notion that

19    production of the requested emails is overly burdensome as Defendant Trean has adopted a

20    paperless system and should not be permitted to claim it is overly burdensome to review and

21    identify responsive documents within that system. Lastly, Plaintiff argues that Defendants failed to

22    support their objection based on privilege because they did not make a *prima facie* showing of

23    privilege or produce a privilege log.

24         In addition to compelling responses, Plaintiff seeks sanctions for spoliation based on the

25    wiping of the hard drive of her employer-issued laptop.  It is not clear the precise sanction Plaintiff

26    _____

27         [3]  This Rule 34 request was propounded on or around March 1, 2013, as part of Plaintiff's fourteenth set
      of requests for production.  *See* Ex. 3 attached to Pl.'s Mot. (#85).  The response was served on or around April

28    4, 2013. Ex. 4.

1   seeks for the alleged spoliation.  Plaintiff seeks fees for having to file this motion under both Rule

2   37(a)(5) and pursuant to the Court's inherent authority.

3        **2.  Defendants' Response (#102)**

4        Defendants characterize Plaintiff's motion as an untimely fishing expedition.  They argue

5   that the request for the entire email inbox and sent box is cumulative and duplicative because they

6   have already produced relevant emails in response to other, more specific Rule 34 requests.

7   Defendants refute the allegation that they have improperly refused discovery, again noting that

8   substantial production has taken place, including production of documents and information from

9   Plaintiff's email inbox, in response to other discovery requests.  Defendants object to production of

10  the entire contents of Plaintiff's email inbox and sent box because Plaintiff has failed to demonstrate

11  a legitimate need for it.  This objection is based in large measure on Defendants' assertion that the

12  request is overbroad because it would necessarily encompass information that has no bearing on

13  Plaintiff's claims.  Defendants further claim that all relevant documents from Plaintiff's email

14  account have been produced in responses to other requests.  Assuming Plaintiff is entitled to the

15  contents of her email account, Defendants contend that they have not waived any privilege

16  concerning communications contained therein.

17          **DISCUSSION**

18  **1.  Motion to Compel**

19       The scope of discovery under Federal Rule of Civil Procedure 26(b) is broad: "Parties may

20  obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

21  defense."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the

22  discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id*.  As

23  the Supreme Court reiterated in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), relevance

24  is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other

25  matter that could bear on, any issue that is or may be in the case."  437 U.S. at 351 (citing *Hickman

26  v. Taylor*, 329 U.S. 495, 501 (1947).  Even so, the scope of discovery is not without limits.  The

27  scope of discovery is limited to information that is relevant to a claim or defense in the lawsuit.  *See*

28  Adv. Comm. Notes to 2000 Amendment to Rule 26(b)(1) ("The rule change signals to the court that

1   it has authority to confine discovery to the claims and defenses asserted in the pleadings, and signals

2   to the parties that they have no entitlement to discovery to develop new claims or defenses that are

3   not already identified in the pleadings.").  Though the line of demarcation between what is relevant

4   and what is not is difficult to define with precision, courts must regulate the breadth of sweeping or

5   contentious discovery.  As has been previously and aptly stated, "[w]hile the standard of relevancy

6   [in discovery] is a liberal one, it is not so liberal as to allow a party to 'roam in the shadow zones of

7   relevance and to explore matter which does not presently appear germane on the theory that it might

8   conceivably become so.'" *Henderson v. Holiday CVS, LLC*, 269 F.R.D. 682, 686 (S.D. Fla 2010)

9   (citing *Food Lion, Inc. v. United Food & Commercial Workers Intern. Union*, 103 F.3d 1007, 1012-

10  13 (C.A.D.C. 1997)).

11          A motion to compel may be brought where responses to Rule 34 requests for production are

12  insufficient.  *See* Fed. R. Civ. P. 37(a)(3)(B)(iv).  The party seeking to compel discovery has the

13  initial burden of establishing that a request satisfies the relevancy requirements of Rule 26(b)(1).

14  *Hinkley v. Vail*, 2013 WL 2444214 (W.D. Wa.), order *rescinded in part* by, 2013 WL 3852984.  It is

15  not necessary for a moving party to make a *prima facie* case to justify discovery.  When the

16  discovery sought appears relevant on its face, "[t]he party resisting discovery bears the burden of

17  establishing lack of relevance by demonstrating that the requested discovery either does not come

18  within the broad scope of relevance or is of such marginal relevance that the potential harm

19  occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."

20  *Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295, 309 (D. Kan. 1996) (citation

21  omitted).  "When the relevancy is not apparent, it is the burden of the party seeking discovery to

22  show the relevancy of the request." *Id* (citations omitted); *see also Dolfo v. Bank of America, N.A.*,

23  2013 WL 1316705 (S.D. Cal.) ("Once the moving party establishes that the information is

24  [relevant], the burden shifts to the opposing party to specify how the discovery request is irrelevant,

25  overly broad, burdensome, or oppressive.") (citations omitted).

26          At issue are two requests for production.  The first, request for production No. 42 (see

27  *supra*), sought production of the contents of the laptop computer used by Plaintiff during her

28  employment and turned over to Nevada Mutual upon termination of Plaintiff's consulting contract.

1   Defendants adequately responded to this request by representing that, upon return, the laptop's hard

2   drive was wiped and the laptop itself sent to a recycling company.  Defendants preserved the

3   contents of Plaintiff's email account, which resides on a separate server.  Defendants also preserved

4   all electronic documents created that had been saved on Defendant Trean's server.  It appears, the

5   primary relief sought relating to this response is Plaintiff's request for spoliations sanctions,

6   discussed *infra*.

7       The second, request for production no. 101, seeks production of the entire contents of

8   Plaintiff's email in box and sent box on Defendant Trean's email server for the years 2008 through

9   March 2011.  Defendants lodged several objections to the request, but did not produce any

10  documents in response.[4]  Before addressing the merits of Defendants' objections, the Court first

11  addresses the argument that the motion is untimely.  The motion was filed after the close of

12  discovery but before the expiration of the dispositive motion deadline.  While neither the Federal

13  Rules, Local Rules, nor Scheduling Order establishes a specific deadline for filing discovery

14  motions, it has long been the policy in this District that, absent unusual circumstances, discovery

15  motions should be filed before the scheduled date for filing dispositive motions.  *See e.g. Gault v.*

16  *Nabisco Biscuit Co.*, 184 F.R.D. 620 (D. Nev.); *see also Argarwal*, 2013 WL 211093 (D. Nev.);

17  *Thurston v. City of North Las Vegas*, 2011 WL 3841110 (D. Nev.); *Hall v. Schumaker*, 2011 WL

18  4458845 (D. Nev.).  Under the standard established in *Gault*, the undersigned finds that the motion

19  was timely.

20      It appears that, throughout the meet and confer process, the parties discussed the relevance

21  of the request.  However, Defendants did not raise a relevance objection in their response to the

22  request.  Even assuming they had, the relevance hurdle is easily cleared.  Throughout the briefing,

23  Defendants expressly acknowledge that the contents of Plaintiff's email in box and sent box

24  contains relevant information.  Indeed, in response to several other discovery requests, emails from

25  the account in question have been produced.  The Court rejects Defendants attempts to narrowly

26  

27      [4] Part of Defendants' argument in opposition to this motion is that documents produced in response to
other requests included relevant documents from Plaintiff's email in box.  It appears, however, that no further

28  documents were produced specifically in response to the request at issue here.

construe relevance to just those specific rationales offered by Plaintiff in her motion.  Plaintiff is permitted to obtain discovery regarding all matter, not otherwise protected, that is relevant to the claims and defenses in the case.  It is hardly noteworthy that Plaintiff's own email account could contain relevant information, especially in a case dealing with the sending of pornographic images and material via email.

Throughout the course of the meet and confer process, it is clear that the primary objection that the request was overly broad and created an undue burden on Defendants.  The objections served in response are not ideal.  They lack a measure of specificity and explanation called for in Rule 34, which requires that when a party states an objection to a request it should include the reasons for the objection. Fed. R. Civ. P. 34(b)(2)(B); *see also Holt v. Nichols*, 2014 WL 250340 (E.D. Cal.) ("[Rule 34] requires that a party responding to a request for production must either state that inspection of documents and related activities will be permitted as requested, or state an objection, including the specifics of the objection and how that objection relates to the documents being demanded.").  "The party opposing discovery has the burden of showing that discovery should not be allowed, and of clarifying, explaining and supporting its objections." *See DirecTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).  Even in the face of less than ideal responses or requests, the Court is vested with broad authority to manage discovery and may exercise that discretion to reach the merits of a discovery dispute despite a party's failure to meet its burden. *Franklin v. United States*, 2013 WL 1962678 *4 (E.D. Cal.); *Marti v. Baires*, 2012 WL 2029720 *3 (E.D. Cal); *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) ("District courts have broad discretion to manage discovery and to control the course of litigation . . . .").  After review, the undersigned has determined to address the merits of Defendants' overbreadth objection despite the failure to include reasons and specifics in the original objection.  It is clear from review of the briefing that the parties had prolonged and extensive discussion regarding the breadth of the request during the lengthy meet and confer process.

Rule 34 requires the moving party to "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A).  The test regarding "particularity" is relative and is viewed on a case by case basis. *8B Wright, Miller & Marcus*, *Federal Practice and*

7

*Procedure* § 2211 (3d Ed. 2010).  It necessarily turns on whether the movant's degree of knowledge would be such that she can designate, identify and enumerate with precision the documents to be produced.  *Id*.  The ideal, however, is not always attainable and Rule 34 does not require the impossible.  "Even a generalized designation should be sufficient when the party seeking discovery cannot give a more particular description and the party from whom discovery is sought will have no difficulty in understanding what is wanted."  *Id*.  The Court has little difficulty in finding that a request for email from a specified email account spanning a specific time period can satisfy the particularity requirement.  However, in this instance, the Court finds that the request is overbroad as Plaintiff made no attempt to refine, limit, or modify what is an otherwise blanket request for the entirety of the email account in question.

In reaching this conclusion, the undersigned finds the reasoning set forth in *Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251 (E.D. Wisc. 2013) persuasive and instructive.  In *Dauska*, the court was addressing a series of Rule 34 requests.  In doing so, it determined that certain requests were over broad because they used language so broad that it was impossible to determine what amongst numerous documents fell within the scope of the requests.  *Dauska*, 291 F.R.D. at 261.  In addressing overbreadth, the court stated: "A discovery request is overly broad and unduly burdensome on its face if it uses an omnibus term such as 'relating to,' 'pertaining to,' or 'concerning' to modify a general category or broad range of documents or information."  *Id*. (citations omitted).  The court went on to state:

> Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not.  They require the respondent either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request.

*Id*. (citations omitted).  The *Dauska* court found requests seeking "all documents and emails that refer or relate to" the allegations or defenses in the case impermissibly broad because response would require compilation and review of "a vast array of material having no possible relevance to [the] lawsuit."  *Id*. at 262.  To require compliance under such circumstances would be unreasonably time-consuming, burdensome and unfair.  The *Dauska* court determined that requests seeking

1   production of documents and emails relating to a particular issue or claim were not overbroad.  For

2   example, the request to produce all documents that "refer[red] or relate[d] to [Defendant's] decision

3   to eliminate Plaintiff's position" because the category of documents to be searched was clear and

4   there was no mystery as to what documents were sought.  *Id*.

5          Here, Plaintiff request is unlimited and is not sufficiently modified or tailored to apprise

6   Defendants what is being sought.  Plaintiff simply requests the entirety of the email in box and sent

7   box for the email account for the years 2008-March 2011 without limitation.  The request is

8   unconnected to any particular or specific claim or defense that is part of this case.  Functionally, this

9   is the same as requesting that the reviewing party scour the voluminous records contained within the

10  general category identified for any and all documents that might be relevant to any and all claims or

11  defenses in a case.  Compliance would, quite clearly, operate like a giant broom sweeping up

12  everything in its path regardless of relevance or usefulness.  It would require Defendants to engage

13  in the mental gymnastics and time-consuming process identified in *Dauska* to determine which of

14  many pieces of information may contain some detail, obvious or hidden, that is within the broad

15  parameters of all claims and defenses.  The email account will, unquestionably, contain untold

16  numbers of entirely irrelevant documents and information.  Plaintiff concedes she worked in a

17  paperless office, meaning virtually everything she worked on during the time period identified

18  would be subject to disclosure.  It is absurd, under the circumstances, to expect Defendant to gather

19  and review this unlimited request.  It is equally absurd to believe that Plaintiff should be given

20  unfettered access to every piece of information within or attached to her email account.  The Court

21  will not require any further response to this request as compliance would be unreasonably time-

22  consuming, burdensome, and unfair.[5]

23         The Court further notes that counsel for the parties had significant meet and confer sessions

24  on this very topic.  It is clear from Plaintiff's counsel's declaration and exhibits attached to motion

25  (#85) that Defendants never stated that they would not, or indeed had not, reviewed Plaintiff's email

26  _____

27         [5] The Court takes exception to Plaintiff's apparent belief that fairness dictates that she be permitted to
    review every document that Defendants have reviewed in order to respond to discovery requests.  There is no
28  basis for this in the Rules or any law that Plaintiff was able to find and cite to the Court.

account for discoverable information.  Defendants continually noted that the request for unfettered access was over broad and created an undue burden.  Defendants specifically did not foreclose further response, asking only that a more specific reference or limitation be provided so that Defendants could adequately respond.  Plaintiff's counsel rejected this imminently reasonable request and continued to push for unfettered access to the entirety of the email account.  Plaintiff's request, as propounded, is overbroad on its face, and patently so.  Having thus determined that a response is not necessary, the Court need not address the remaining objections.

**2. Spoliation**

There are two sources of authority under which the Court can sanction a party for spoliation of evidence - its inherent authority or Rule 37.  *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir.2006).  Regardless of whether it is under Rule 37 or its inherent authority, a federal court applies federal law when addressing issues of spoliation of evidence.[6]  *See Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993) (applying federal law when addressing spoliation in diversity litigation). Here, Plaintiff requests that the Court exercise its inherent authority to enter an order for (1) a rebuttable presumption or (2) an adverse inference jury instruction.

The Court has "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence."  *Glover*, 6 F.3d at 1329.  Such broad power includes permitting an adverse inference from the spoliation of relevant evidence against the spoliating party.  *Id.*  The Ninth Circuit has explained that the adverse inference sanction is based on evidentiary and policy rationales that seek to deter a party who has notice of an item's relevance to litigation from destroying it.  *See Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).  A finding of bad faith is not a prerequisite for an adverse inference.  *See Glover*, 6 F.3d at 1329.

---

[6] Federal law governs the imposition of spoliation sanctions because that constitutes an evidentiary matter.  *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993).  However, state law is relevant to a determination of whether spoliation sanctions are warranted if it provides the standard for recovery, for example, as in slip and fall actions.  *See Heath v. Wal-Mart Stores East, LP*, 697 F.Supp.2d 1373, 1377 (N.D. Ga. 2010) (finding Defendant's failure to preserve more than eleven minutes prior to the slip and fall did not constitute spoliation because the video showed source of spill and fall).  State law also provides guidance to federal courts in defining spoliation and the relevant factors, such as culpability.  *Id.*

Spoliation of evidence is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002). Therefore, the duty to preserve begins when a party reasonably should have known that the evidence is relevant to anticipated litigation. *See In re Napster*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006). Moreover, a spoliation remedy requires some degree of culpability. *Id.* at 1078. The applicable standard of proof for spoliation appears to be by a preponderance of the evidence. *See LaJocies v. City of North Las Vegas*, 2011 WL 1630331 *1 (D. Nev.) (citing *In re Napster*, 462 F.Supp.2d at 1072). The party seeking an adverse inference instruction must establish: (1) that the spoliating party had an obligation to preserve the evidence; (2) that the evidence was destroyed or significantly altered with a culpable state of mind; and (3) that the evidence was relevant to the other party's claim in that a reasonable trier of fact could find that it would support that claim. *Id*. 452 F.Supp.2d at 1078.

Plaintiff's spoliation request is not clear. At first blush, it does not even appear it is a request for spoliation sanctions. Plaintiff sets forth a plethora of case law discussing the standards governing spoliation and the potential sanctions that may attach to spoliating behavior. However, she then asserts that she is entitled to review, based on her requests for production no. 42 and 101, discussed *supra*, the entirety of the preserved email account to determine whether any information has been lost or destroyed. She then suggests that she would be entitled to seek additional sanctions for spoliation based upon the results of this review. Having determined that the Defendant is not required to respond to the patently overbroad request for the email account in question, there is no need to "preserve" the right to pursue spoliation sanctions pending review of the email account.

It also appears that Plaintiff is requesting unspecified spoliation sanctions against Defendant for the alleged destruction of the contents of her laptop, including emails. The record does not support the conclusion that Defendant altered or otherwise destroyed the contents of Plaintiff's laptop. Attached as exhibit A to Defendants' response (#102) is a declaration which makes clear that Defendants did not simply destroy the laptop and emails in question. The work email account

11

Plaintiff seeks was backed up, imaged, and the emails are located on a separate, accessible server. They never resided on the laptop.  Other than Plaintiff's counsel's fervent belief, the claim of destruction of the emails is entirely unsubstantiated.  Moreover, at the time of Plaintiff's employment, Defendants utilized a paperless claims system which resided on the server of a third-party vendor pursuant to a licensing agreement.  Thus, any work performed on any particular claim was not destroyed when the laptop was "wiped."  The Court will not entertain spoliation sanctions because Plaintiff's counsel does not believe defense counsel.  The declaration attached as exhibit A to the response (#102) sufficiently demonstrates that no documents saved to the laptop's hard drive or desktop were destroyed prior to the laptop being "wiped."  Even under a lenient preponderance standard, there is nothing to suggest that relevant documents residing on Plaintiff's laptop were destroyed or otherwise altered.  The request for spoliation sanctions is denied.

Based on the foregoing and good cause appearing therefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel (#85) is **denied**.

DATED: February 6, 2014.

_____

C.W. Hoffman, Jr.
United States Magistrate Judge

12